IN THE UNITED STATES DISTRICT COURT
MIDLLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES,**
    **Plaintiff,**

**v.**                                **Case No. 6:15-cr-48-ORL-28KRS**

**WILLIAM HENRY KHEEN II,**
    **Defendant.**
_____/

## SENTENCING MEMORANDUM ON BEHALF OF WILLIAM HENRY KHEEN II

Through the undersigned counsel, the Defendant, William Kheen, files this Sentencing Memorandum setting forth all factors the Court should respectfully consider in determining a sufficient sentence, but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a). William Kheen ("Kheen") pled guilty to Count One and Two of the Indictment charging him with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(A) and (b)(1) and Production of Child Pornography, in violation of 18 U.S.C. §2251(a) and (e). Based on numerous factors set forth in 18 U.S.C. § 3553, Kheen contends he should receive a sentence which takes into account the mitigating factors that will be discussed in greater detail in a later part of this sentencing memorandum. Kheen respectfully requests this Honorable Court grant a downward departure and sentence him below the guideline range indicated in the

Presentence Investigation Report conducted by and issued by Probation Officer, David J. Salce.

The primary directive in 18 U.S.C. § 3553(a) (2) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C § 3553. 18 U.S.C. § 3553 (a) (2) states that such purposes are: (A) to reflect the seriousness of the offense, to promote respect and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educations or vocational training, medical care or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553 (a) further directs sentencing Courts to consider the following factors

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The kinds of sentences available;

(3) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(4) The need to provide restitution to any victims of the offense.

Other statutory sections also give the district court directions in sentencing. Furthermore, 18 U.S.C. §3553 (b)(1) allows the Court to depart from the

guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission…" 18 U.S.C. §3553 (Supp 2004).

Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitations in determining whether and to what extent imprisonment is appropriate, based on the factors in 18 U.S.C. § 3553(a), the sentencing Court is required to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Under 18 U.S.C. § 3661, no limitation shall be placed in the information concerning the background, character and conduct of the defendant which a Court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Thus, in all cases the sentencing Courts must consider the factors set forth in 18 U.S.C. 3553(a), not just the Sentencing Guidelines in determining a sentence that is sufficient but not greater than necessary to meet the goal of sentencing.

## Statutory Sentencing Factors

In the instant case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing

1. **The nature and Circumstances of the offense and the History and Characteristics of the Offender**

   a. Nature and circumstances of offense:

   b. History and Characteristics of William Henry Kheen, II:

2. **The need for the sentence to be imposed to promote certain statutory objectives:**

   a. To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

   b. To afford adequate deterrence to criminal conduct

   c. To protect the public from further crimes of the defendant.

   d. To provide the defendant with needed educations or vocational training, medical care, or other correctional treatment in the most effective manner.

3. **The kinds of sentences available.**

Therefore the court must look at all of these factors when determining an appropriate sentence.

## Factual Background

The nature and circumstances of this offense are as follows: On or about December 31, 2014 a Task Force Agent with the Florida Department of Law Enforcement conducted an undercover investigation to locate computers sharing

files which contained child pornography.  During said investigation a computer was located which was sharing files that are known to law enforcement to contain child pornography.  Further investigation revealed the IP address of the computer being used and that information was traced to the Defendant's home in Lake County, Florida.  A search warrant was executed on February 17, 2015 which resulted in the seizure of electronics and computer related items, as well as the arrest of Mr. Keehn.

## History and Characteristics of William Henry Keehn

William Henry Keehn II is a 52 year old male, who was born in Biloxi, Mississippi.  He is the only child born to the legal union between William Henry Keehn, Sr. and Sandra (nee Hasselman) Ramsauer.  Following his parent's divorce shortly after he turned one, Keehn and his mother moved to East Moline, Illinois where he grew up.  Keehn's father, William Henry Keehn Sr., age 70, is employed as a laptop repair technician and currently resides in Melbourne, Florida and his mother Sandra Ramsauer, age 72, is retired and currently resides in Eustis, Florida.  Keehn's mother married his step-father, Joseph Ramsauer, when Keehn was 10 years old.  The marriage resulted in the birth of three additional children, Kenneth Keehn, Marla Keehn, and Heather Keehn, Mr. Keehn's paternal half siblings.  Said siblings range in age from 42 to 46 and reside in Arkansas, Florida and Illinois respectively.

Kheen grew up in East Moline, Illinois with his mother, and after she remarried with his step-father. From the outside looking in one would think that he led a pretty normal and happy childhood; however that is far from the truth. Under the façade of normalcy Keehn hid the vestiges of severe physical and emotional abuse.

During childhood while his greatest worry should have doing well in school and behaving himself, he had to contend with multiple assaults being made upon his person, his body, and his mind. The first memory that he can recall as a child is one of abuse. Horrendously, it happened when he was merely three (3) years old. Keehn recalls waking up from a nap suffocating, crying, feeling a weight on his chest, and something in his mouth. His next memory is seeing his uncle running naked from his bedroom. The memory of this incident and its implications has haunted silently for years.

The abuse, however, didn't stop there. Keehn can recall his step-father purposely masturbating in front of him numerous times beginning when he was four (4) years old and always within arm's length. At five (5) years old he recalls being abused and bullied by older children in his neighborhood. It began with the older children enticing him to play with them, giving him trinkets and then asking that he perform small favors for them, which included watching the older child masturbate and making a five (5) year old Keehn watch explicit movie and video

scenes depicting pornography and violence towards women. This behavior went on for several years and encompassed horrific circumstances for Keehn. From the ages of five (5) to ten (10) years old he recalls being forced to watch pornography, watch older boys masturbate, and in one instance even bear witness to the sexual assault of an underage little girl. Decades later he can still remember being a small child when the older boy from the neighborhood that would masturbate in front of him gathered up all of the small children from the area, took them to a secluded area hidden from view and there proceeded to sexually assault a young girl, not much older than Keehn himself was at the time. To this day he is afflicted with nightmares where he can hear the young girl cry out for help and he can see himself paralyzed with fear, knowing that if he had said anything the consequences he would've suffered would have undoubtedly been worse.

    In addition to the trauma mentioned above, from the ages of five (5) thru (10) Keehn can recall going to his best friend's house to play. However, what started off as fun innocent times with another child his age soon turned into another location where he wasn't safe from harm. Keehn's best friend had an older that they were often left alone with as all of the adults in the area worked. He recalls coming home from school and going to his friend's home to play and watch television until his mother arrived home from work only to be forced by his friend's older brother to participate in unwanted fondling, and other sexual conduct

without their clothes on.  The abuse escalated from him being fondled and forced to watch the older child masturbate and culminated in him being continuously sexually abused and sodomized from the ages of eight (8) to ten (10) years old.  Keehn suffered from feelings of depression and despair at an early age due to all of the ongoing abuse but felt he couldn't confide in anyone as he was told by his abuser that he would suffer even worse consequences if he divulged what was happening to anyone.

     Unfortunately for Keehn, the situation at home was not much better than that which he suffered at the hands of his peers.  At ten (10) years old Keehn can recall his uncle forcing him to drink alcohol and coercing him into smoking marijuana.  He recalls "feeling weird", which he now understands is due to being affected by the combination of alcohol and drugs, and he remembers his uncle making him perform sexual acts on him, including but not limited to oral sex.  Keehn recalls being threatened that he couldn't tell anyone what had transpired between himself and his uncle as no one would believe him, and he would be severely punished for drinking and smoking marijuana.  In addition to this incident when he was ten (10) years old, Keehn also recalls his step-father's brother making homosexual advances towards him.  He remembers this being the first time he was able to defend himself and thwart the abuser from taking advantage of him.

     At the age of thirteen (13), looking to get away from the abuse suffered at

the hands of family members and neighborhood bullies Keehn decided to move in with his father and his new family.  Unfortunately for him this move didn't prove to be the change he had hoped for.  Immediately upon his arrival his father commenced to make inappropriate comments towards Keehn regarding his two step-sisters.  His father would subject Keehn to sexually suggestive conversations, going so far as to encourage him to have a sexual relationship with his step-siblings.  When Keehn declined to participate in the conversations and made it clear to his father that engaging in sexual conduct with his step-sisters was not something he ever intended to do, his father would torment him inflicting non-relenting emotional abuse on him, including but not limited to calling him names and questioning his manhood.  He would force Keehn to watch his (the father's) extensive pornography collection, which included videos, pictures, magazines, and even Polaroid pictures of Keehn Sr. engaging in sexually explicit acts with other women, while informing him that those acts were what he should be performing with his step-sisters and his inability or reluctance to do so meant he was not and would never be a "real" man.

    The abuse continued as Keehn got older.  At sixteen (16), Keehn was forced by his father to perform sexual acts on his father's then girlfriend.  On another instance his father was engaging in sexual intercourse with a girlfriend in front of Keehn and asked him to join in.   At age seventeen (17) his father even went so far

as to hire a nineteen (19) year old female prostitute to engage in sexual intercourse with Keehn.  The abuse continued until Keehn was able to attain adulthood and was finally able to remove himself from the harmful situation.

Unfortunately for Keehn years of abuse at the hands of those he loved who were supposed to love, shelter and protect him left him greatly affected.  He internalized the pain, hatred and shame associated with his abuse for years, only to have it come out in recurring nightmares and feelings of inadequacy.  He was able to move on, enrolled and graduated from Black Hawk College with an Associate's Degree in Applied Science in 1982.  He later received a Bachelor of Arts Degree in Computer Science from Southern Illinois University in 1987.

He's been married twice in his life.  He married his first wife, Katherine Voorhies in 1992.  The couple divorced in 1997 and there were no children born to the marriage.  He married his second wife, Connie St. Clair in 1999.  There were three children born from the marriage.  Unfortunately, as a result of the charges pending in the instant case Mrs. Keehn has filed for divorce and wants nothing more to do with Mr. Keehn.

Through all of this Keehn retains a strong bond and supportive relationship with his mother, his step-father and numerous other family members.  They provide him with a strong sense of support and encourage him through these difficult times in his life and assure him that they will continue to be there for him

thru the pendency of this case and once he's released from incarceration.

In addition to the written documentation of his history and personal characteristics, Kheen will provide live testimony at the time of sentencing in support of a significant variance from the guidelines.

**<u>Assertions and Mitigation by William Keehn in Regards to Sentencing</u>**

Keehn entered into a plea agreement with the United States Government on or about June 30, 2015.  In this plea agreement the Government agreed that it would not object to an appropriate level decrease in the base offense level for acceptance of responsibility.  There were two downward adjustments the Government referenced in the plea agreement:  Acceptance of Responsibility – two levels U.S.S.G. §3E1.1 (a) and Acceptance of Responsibility – one level U.S.S.G. §3E1.1(b).

In addition to these level reductions Keehn also contends that the court should strongly consider the considerable abuse he suffered as a child, his advanced age and lack of criminal history when considering the appropriate sentence for the charges against him. Keehn would respectfully request that the court sentence him in accordance to the statutory minimum sentence or lower if the court deems fit based on the factors referenced above.  At the time of sentencing. Keehn will have been in custody for 260 days.

## CONCLUSION

WHEREFORE, for the reasons and arguments listed above, the Defendant respectfully requests this Honorable Court consider the lowest permissible sentence under the law and depart downward where possible.

## CERTIFICATE OF SERVICE

On October 16, 2015, using CM/ECF, I electronically filed the foregoing with the clerk of the court which will send notice to: US Attorney's Office, 400 W. Washington Street, Suite 300, Orlando, Florida 32801 at Karen.gable@usdoj.gov
By: rmandell@fightforyou.org

       */s/ Robert I. Mandell/*

ROBERT I. MANDELL, ESQUIRE
Mandell Law, P.A.
Florida Bar Number: 0015484
201 S. Orange Ave., Ste. 900
Orlando, Florida 32801
Tele: (407) 956-1180
Fax: (407) 956-1181